A05A1104. THE STATE v. McMICHAEL et al.
(624 SE2d 212)

BERNES, Judge.

Defendants/appellees Vernon Lashun McMichael and Kevin Tremayne Rogers were indicted[1] after drug and weapon evidence was discovered during searches following a routine traffic stop. The trial court granted appellees' separate pre-trial motions to suppress the evidence, from which the State appeals. In its decision, the trial court concluded that the searches were not conducted pursuant to voluntary consent and were illegal. We disagree and reverse.

"When reviewing a trial court's decision on a motion to suppress, we must adopt the trial court's findings of fact unless those findings are clearly erroneous and not supported by any evidence. However, when conducting such review, we owe no deference to the trial court's application of the law to undisputed facts." (Citations omitted.) *Padron v. State,* 254 Ga. App. 265 (562 SE2d 244) (2002).[2]

At the motion to suppress hearing, the only witnesses to testify were the two police officers who conducted the traffic stop and subsequent searches. Viewed in the light most favorable to the trial court's findings of fact, the record shows that on or about April 23,

---

[1] Both McMichael and Rogers were indicted for violations of the Georgia Controlled Substances Act for possession of cocaine (Count 1) and possession of less than one ounce of marijuana (Count 2). McMichael also was indicted for a no tag light violation (Count 3). Rogers also was indicted for violations of the Georgia Controlled Substances Act for possession of less than one ounce of marijuana (Count 4) separate and distinct from Count 2, carrying a concealed weapon (Count 5), and possession of a firearm by a convicted felon (Count 6).

[2] Although Rogers contends that the State's statement of facts is disputed in its entirety, the appellate briefs from both parties set forth the same material facts as to how the events occurred and are squarely in accordance with the trial court's findings of fact.

2004 at approximately 2:26 a.m., Clayton County Police Officer Blake Sheriff stopped McMichael, who was accompanied by Rogers, for driving a vehicle with an inoperative tag light. McMichael gave Officer Sheriff his driver's license and Officer Sheriff completed a written traffic citation. After Officer Sheriff gave the citation to McMichael and returned McMichael's driver's license,[3] McMichael *initiated* further discussion and began questioning Officer Sheriff about the violation. McMichael and Officer Sheriff walked back to the rear of the vehicle where Officer Sheriff showed McMichael the inoperative tag light.

In the meantime, Officer Christopher Williams, who was assisting Officer Sheriff during the traffic stop, had obtained Rogers' identification and learned through a Georgia Crime Information Center (GCIC) check that although there were no outstanding warrants, Rogers had a prior weapons charge.

After discussing the violation, Officer Sheriff asked McMichael whether he had any contraband inside the vehicle.[4] McMichael said no and then consented to Officer Sheriff's request to search the vehicle.

Rogers was instructed to exit the vehicle so that the vehicle search could be conducted. After Rogers' exit, Officer Williams asked him whether he had any weapons on his person. Rogers admitted that he had a firearm in his back pocket. The firearm was removed and Rogers was arrested. During the search incident to his arrest, marijuana also was found inside the pockets of Rogers' cargo pants.

After the officers also discovered crack cocaine and marijuana during the search of the vehicle,[5] McMichael was placed under arrest.

1. *McMichael's Consent to Search of Vehicle.*

> The Fourth Amendment protects a person's right to be secure against unreasonable searches and seizures. The " 'touchstone of the Fourth Amendment is reasonableness.' *Florida v. Jimeno*, 500 U. S. 248, 250 (111 SC 1801, 114 LE2d 297) (1991)." *Ohio v. Robinette*, 519 U. S. 33, 39 (117 SC 417,

---

[3] Officer Sheriff testified that at this point, i.e., after he had given McMichael the citation and returned McMichael's driver's license, McMichael was free to go.

[4] The officers admitted that McMichael and Rogers had been cooperative and behaved normally, there were no drugs or weapons in plain view, and there was no indication of ongoing criminal activity. Officer Sheriff testified that he nonetheless asked whether there was contraband in the vehicle because he had been informed of Rogers' prior weapons charge.

[5] Officer Sheriff testified that after the firearm was found in Rogers' possession, he asked McMichael for consent to search the vehicle again and McMichael repeated his consent. He further testified that McMichael was free to leave even after the search began and that if he had withdrawn his consent, the officers would have ended the search and McMichael would have been allowed to leave. However, McMichael never withdrew his consent at any time.

136 LE2d 347) (1996). "Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances." Id.

*State v. Sims*, 248 Ga. App. 277, 278 (546 SE2d 47) (2001). To pass muster under the Fourth Amendment, a law enforcement officer's continued questioning of a vehicle's driver and passengers outside the scope of a valid traffic stop is limited to when the officer has a reasonable articulable suspicion of other illegal activity or when the valid traffic stop has de-escalated into a consensual encounter. *Daniel v. State*, 277 Ga. 840, 841-842 (1) (597 SE2d 116) (2004).

In this case, it is undisputed that the initial stop was valid. It also is undisputed that there was no reasonable articulable suspicion of other illegal activity and that the officer's request for consent to search the vehicle occurred outside the scope of the initial stop. Accordingly, the parties[6] solely contest whether the stop of McMichael's vehicle had de-escalated into a consensual encounter allowing for McMichael's voluntary consent to a search of the vehicle.

> A consensual encounter has been defined as simply the voluntary cooperation of a private citizen in response to non-coercive questioning by a law enforcement official. Because an individual is free to leave at any time during such an encounter, he is not "seized" within the meaning of the [F]ourth [A]mendment.

(Citation omitted.) *Daniel*, 277 Ga. at 842 (2). To determine whether the encounter became consensual, "the courts must look to the totality of the circumstances in determining whether a reasonable person would have felt free to leave." (Citations omitted.) Id. at 843 (2). A nonexhaustive list of factors that have been identified by courts in making this determination includes:

> the existence and nature of any prior seizure; whether there was a clear and expressed endpoint to any such prior detention; the character of police presence and conduct in the encounter under review (for example — the number of officers, whether they were uniformed, whether police isolated subjects, physically touched them or directed their movement, the content or manner of interrogatories or

---

[6] Rogers, the passenger, is the only appellee who filed an appellate brief. Rogers has standing to challenge his detention and to seek the suppression of evidence obtained as a result of his alleged illegal detention. See *State v. Williams*, 264 Ga. App. 199, 201 (590 SE2d 151) (2003); *State v. Cooper*, 260 Ga. App. 333, 334-335 (1) (579 SE2d 754) (2003).

> statements, and "excesses" factors stressed by the United States Supreme Court); geographic, temporal and environmental elements associated with the encounter; and the presence or absence of express advice that the citizen-subject was free to decline the request for consent to search. In general, a full examination must be undertaken of all coercive aspects of the police-citizen interaction.

(Citations omitted.) Id. Bearing in mind that no single factor is dispositive, in *Daniel*, the Supreme Court of Georgia recognized three significant factors that have been given particular scrutiny in analyzing this issue: (a) whether the driver's documents have been returned to him;[7] (b) whether the officer informed the driver that he was free to leave;[8] and (c) whether the driver had an appreciation that the traffic stop had reached an endpoint. Id. at 843-845 (2) (a)-(c).

Considering the factual circumstances in accordance with these objective factors, we conclude that McMichael was not under any compulsion to remain on the scene, and that he voluntarily consented to the officer's request to search during a de-escalated, consensual encounter. The evidence in this case is not in conflict as to the crucial fact that before Officer Sheriff requested and obtained McMichael's consent to search, the completed written citation and his driver's license had been returned to McMichael. The evidence fails to show that McMichael was expressly advised that he was free to go. However, nothing of record indicates that his immediate departure had been impeded.

Nonetheless, the trial court concluded that McMichael's subsequent inquiry as to the basis for the stop indicates that he did not appreciate that the traffic stop had reached an endpoint. The trial court further concluded that the officers' subsequent questioning of McMichael and Rogers about whether they possessed contraband further obliterated any indication that they were free to leave. We disagree.

The United States Supreme Court has clarified that an officer is not required to advise the driver that he is "free to go" before a consent to search will be recognized as voluntary. *Ohio*, 519 U. S. at 39-40. We

---

[7] While "the return of documents does not conclusively establish that a traffic stop has de-escalated into a consensual encounter[,]" *Daniel*, 277 Ga. at 844 (2) (a), it is clear that "an encounter initiated by a traffic stop may not be deemed consensual unless the driver's documents have been returned to him." (Citations omitted.) Id. at 843-844 (2) (a).

[8] Rejecting any bright-line rules for the test of reasonableness under the Fourth Amendment, the Court concluded that this factor was merely one consideration to be measured in an objective examination of the totality of the circumstances. *Ohio*, 519 U. S. at 39.

recognize that absent this express advisory, however, "[t]he moment at which a traffic stop concludes is often a difficult legal question, not readily discernible by a layperson." *Daniel*, 277 Ga. at 845 (2) (c). It is understandable that a driver would believe that he is validly in a police officer's custody as long as the officer continues to interrogate him. Id. However, in this case, there is no evidence that Officer Sheriff continued to interrogate and detain McMichael after he returned his documents, signaling the conclusion of the traffic stop. To the contrary, the evidence shows that *McMichael initiated and pursued further discussion* with Officer Sheriff even after all documentation had been returned to him. By doing so, the police-citizen encounter was extended by McMichael, not by the officer. Since McMichael was not being further detained by the officer, his continued presence on the scene was of his own volition. At the point when McMichael signed the traffic citation, the completed traffic citation had been handed to him, his driver's license had been returned, and Officer Sheriff no longer was interrogating him, any reasonable person would have appreciated that the traffic stop had reached an endpoint. When McMichael failed to depart, the encounter became consensual and Officer Sheriff was authorized to request consent to search the vehicle.

"[W]hen a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given." (Citations and punctuation omitted.) *Schneckloth v. Bustamonte*, 412 U. S. 218, 222 (II) (93 SC 2041, 36 LE2d 854) (1973). "The voluntariness of a consent to search given by the occupant of a vehicle during a consensual police-citizen encounter is determined based upon the totality of the circumstances. Voluntariness must reflect an exercise of free will, not merely a submission to or acquiescence in the express or implied assertion of authority." (Citations omitted.) *Daniel*, 277 Ga. at 846 (3). "[M]ere police questioning does not constitute a seizure." *Florida v. Bostick*, 501 U. S. 429, 434 (II) (111 SC 2382, 115 LE2d 389) (1991). Officers may request consent to search as long as they do not convey a message that compliance with their request is required. Id. at 435 (II). The voluntariness of the consent does not depend upon the fact that the individual was not expressly told by the officers that he was free to decline cooperation with their inquiry. See *United States v. Mendenhall*, 446 U. S. 544, 554-556 (II) (A) (100 SC 1870, 64 LE2d 497) (1980). "While knowledge of the right to refuse consent is one factor to be taken into account, the [State] need not establish such knowledge as the sine qua non of an effective consent." *Schneckloth*, 412 U. S. at 227 (II) (B). "[T]he crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty

to ignore the police presence and go about his business." (Citation and punctuation omitted.) *Bostick*, 501 U. S. at 437 (II).

There is no evidence that the officers further detained, harassed, intimidated, or conveyed a message that McMichael's consent to the search was required. Prior to the search, there was one-on-one contact between Officer Sheriff and McMichael while Officer Williams approached Rogers separately.[9] McMichael obviously did not feel intimidated in the police presence since he voluntarily remained on the scene to engage in further discussions with Officer Sheriff about the traffic violation. As such, there is no basis upon which to conclude that McMichael's consent for the search was anything other than voluntary. Accordingly, we conclude that the circumstances in this case reflect that the initial traffic stop had de-escalated into a consensual encounter, which led to McMichael's voluntary, uncoerced consent to search the vehicle. See *Smith v. State*, 240 Ga. App. 150, 151 (1) (522 SE2d 744) (1999) (upholding consent to search as voluntary when officer issued defendant a citation and, without threat or coercion, requested and received defendant's permission to search car after a legal stop). See also *Lastohkein v. State*, 199 Ga. App. 555, 555-556 (1) (405 SE2d 554) (1991) (upholding search pursuant to voluntary consent based on trooper's uncontroverted account of events that transpired following the stop, which failed to indicate that the consent was coerced). Therefore, the seizure of the drug evidence from the vehicle was authorized.

2. *Search of Rogers.*

> [W]hen police make a traffic stop, as a practical matter, not only the driver of the stopped vehicle but also any passengers are detained during the stop and are considered "seized" within the meaning of the Fourth Amendment. Accordingly, as a passenger in the stopped vehicle, [Rogers] was entitled to the benefit of Fourth Amendment reasonableness requirements applicable to the temporary seizure of [his] person.

(Punctuation omitted.) *Chang v. State*, 270 Ga. App. 814, 815 (608 SE2d 283) (2004). To the extent that Rogers argues that the validity of McMichael's consent to the search further affects the validity of his search and seizure, his claims are resolved in Division 1 above. See *State v. Williams*, 264 Ga. App. 199 (590 SE2d 151) (2003).

---

[9] After the consent had been given and Officer Sheriff started searching the vehicle, another officer, Officer Rommelman, stood by at the scene.

Moreover,

> It is . . . reasonable for the officer to request identification from a passenger, and to run a computer check on the driver and the passenger for outstanding warrants. The risks inherent in traffic stops create a strong interest in officer safety that justifies reasonable safety measures that minimally intrude upon the Fourth Amendment privacy expectations of motorists. Background checks on vehicle occupants for outstanding warrants or criminal histories allow officers to better determine whether a detained motorist poses an increased risk for violent behavior during the stop, and whether backup or other safety measures may be prudent. These checks are minimally intrusive safety measures that do not unreasonably expand the scope of a valid traffic stop or its duration, as long as under the circumstances they do not unreasonably prolong the stop. (Citations and footnotes omitted.) [*Williams*, 264 Ga. App. at 201-203].

(Punctuation omitted.) *Chang*, 270 Ga. App. at 815-816. Rogers was ordered out of the vehicle so that the search could be conducted. When Rogers exited the vehicle, the officers were aware that he had a prior criminal history involving a weapons charge. Officer Williams asked Rogers whether he had any weapons in his possession. Rogers voluntarily responded that he had a firearm in his back pocket. Officer Williams gave uncontroverted testimony that he did not coerce Rogers to answer his question. Accordingly, the seizure of the weapon evidence from Rogers' person was valid.

After the concealed firearm was found in Rogers' possession, he was placed under arrest with probable cause. Accordingly, as incident to a lawful custodial arrest, the officers were also authorized to continue the search of Rogers' person, which resulted in discovery of additional drug evidence. See *Tuggle v. State*, 236 Ga. App. 847, 849 (1) (e) (512 SE2d 650) (1999); *Bentley v. State*, 214 Ga. App. 580, 582 (3) (448 SE2d 479) (1994). Based on the foregoing, we reverse the trial court's grant of appellees' respective motions to suppress.

*Judgment reversed. Blackburn, P. J., and Miller, J., concur.*

DECIDED NOVEMBER 23, 2005 —
RECONSIDERATION DENIED DECEMBER 9, 2005 —

*Robert E. Keller, District Attorney, Anece Baxter White, Assistant District Attorney*, for appellant.
*Kaine & Jones, Rolf A. Jones, Paul S. Weiner*, for appellees.