### A08A0403. CUARESMA et al. v. THE STATE.
(663 SE2d 396)

JOHNSON, Presiding Judge.

We granted interlocutory review in this case to determine whether the trial court correctly denied the defendants' motion to suppress. Mark Cuaresma and Justin Crumbley were indicted after drug and weapon evidence was discovered during a search following a routine traffic stop. The trial court denied Cuaresma and Crumbley's motion to suppress the evidence, concluding that the search was conducted pursuant to voluntary consent. Cuaresma and Crumbley appeal. We reverse because Cuaresma and Crumbley's consent to the search was coerced.

When reviewing a trial court's decision on a motion to suppress, this Court's responsibility is to ensure that there was a substantial basis for the decision.[1] We adopt the trial court's findings of fact unless those findings are clearly erroneous and not supported by any evidence.[2] However, when conducting such a review, "we owe no deference to the trial court's application of the law to undisputed facts."[3] At the motion to suppress hearing, the only witness to testify was one of the police officers who conducted the traffic stop and subsequent search. A videotape of the traffic stop was also played for the court.

Viewed most favorably to uphold the trial court's ruling on the motion to suppress, the evidence shows that as an officer approached the truck in his marked police vehicle, he made eye contact with the driver, who then "maneuvered the vehicle in such a manner as to make a ninety degree turn across three lanes of traffic, turn into the

---

[1] See *Morgan v. State*, 195 Ga. App. 732, 735 (3) (394 SE2d 639) (1990).
[2] See *State v. McMichael*, 276 Ga. App. 735 (624 SE2d 212) (2005).
[3] (Citations and punctuation omitted.) Id.

turning lane and then pull into the Chevron gas station." Because the driver's actions appeared evasive, the officer contacted a backup officer and pulled into a nearby business in order to observe the truck further. The officer observed the truck pull up to the gas pumps, but leave without getting any gas. While the truck was stopped at the gas station, a passenger got out of the truck and placed something in the trash can near the pumps. The passenger and the driver switched places, and the truck left the gas station. Once back on the road, the driver "began to go west bound but at the last minute turned north onto Hwy 5 and then turned into the old Wal-Mart parking lot and headed for Hwy 92 through the parking lot." At this point, the officer initiated a traffic stop and turned on the patrol car's audio/video recording equipment.

The videotape of the incident shows that the officer immediately began questioning the driver, Crumbley, in an intimidating fashion about what the truck was doing at the gas station and who had been driving the truck at that point. Crumbley attempted to answer some of the questions, but his answers did not satisfy the officer. At this point the officer had not even asked for a driver's license, and at no point did the officer discuss the ostensible reason for the traffic stop: the lane change violation. In fact, as the officer admitted at the motion to suppress hearing, within two minutes of stopping the truck, officers had taken Crumbley to the rear of the truck and begun asking for consent to search before even telling him why the truck had been stopped. As the officer further admitted at the motion to suppress hearing, "the truth of it [the stop] was, [the officers] weren't really interested in the traffic violation, [they] wanted to search the car."

The officer told Crumbley, "Look, dude, you can either answer my questions or you can go to jail for obstruction." "If you got something in there I need to know about you better tell me now before I get a dog out here." The officer then stated, "the truth is gonna set you free . . . I have a dog on duty. I'm gonna bring a dog up here." "If I get a dog in and that dog hits, I don't need your consent no more. You can do it the easy way or you can play it the hard way because if you play the hard way, dude, I'm gonna have no problem doing everything . . . [the videotape becomes muted]."

Subsequently, the officer again badgers Crumbley within the first few minutes of pulling him over: "Are you giving me consent to search or is he gonna call a dog." "Either give me consent or I'm calling a dog." "Yes or no. Yes or no. I'm telling you. If you play the hard way I'm gonna hook every charge on you that I find. If you play nice and help us out, that will be heavy consideration." "Are you giving me consent to search. Yes or no. Are you? It's an easy question. I've explained it to you three times, dude. Yes or no." At this point,

Crumbley, as the driver of the truck, gave consent to search the truck, which actually belonged to Cuaresma.[4]

The videotape shows that the officers barraged Cuaresma and Crumbley with questions and generally acted in a coercive, harassing, intimidating manner. Following Crumbley's consent to search the truck, the officers conducted the search and discovered contraband. At the end of the video, the officers discuss what traffic violation they can use to justify the stop. In fact, one of the officers admitted at the motion to suppress hearing that the traffic violation was pretextual and that he assumed the defendants were up to something: "If I give Mr. Crumbley his ticket and he signs it, then the stop is effectively over and I've lost my window of opportunity."

1. Cuaresma and Crumbley first contend the trial court erred in finding that there was a valid basis for the initial traffic stop. However, while there is controversy as to whether the truck driver committed any traffic offense, we cannot find the trial court's decision in this regard clearly erroneous. Where, as here, the credibility of the police officer testifying at the motion to suppress is outcome-determinative, we are guided by three principles with regard to the interpretation of the trial court's judgment of the facts:

> First, the judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.[5]

Here, one of the officers testified that the driver of the truck made an illegal lane change by failing to signal in violation of OCGA § 40-6-123 (b). The trial court's finding in this case is not clearly erroneous.

Moreover, the fact that the traffic stop was admittedly pretextual does not change this result. If an officer witnesses a traffic violation, the ensuing stop is never pretextual, regardless of the officer's

---

[4] The state maintains that Crumbley lacks standing to contest the validity of the search since he was merely the driver of the truck and not the owner of the truck; however, the state did not raise this argument in the trial court. Moreover, it is Crumbley's consent which the state relies upon to support its case, and, contrary to the state's argument, even a mere passenger may move to exclude evidence seized during an unconstitutional stop and indirectly challenge the search of the car. *State v. Menezes*, 286 Ga. App. 280, 282 (1) (648 SE2d 741) (2007). The state's argument on this point lacks merit.

[5] *Noble v. State*, 283 Ga. App. 81, 82-83 (640 SE2d 666) (2006).

subjective intentions, and the officer has probable cause to make the stop.[6] This allegation of error is thus without merit.

2. Cuaresma and Crumbley next contend that their detention exceeded permissible limits and that they did not give valid consent to search the truck. The officer testified that Crumbley seemed nervous and that his answers were evasive. However, the officer's manner of questioning from the outset of the stop would have made anyone nervous. Moreover, at this point, the officer's only knowledge of criminal wrongdoing was that the truck had made an illegal lane change. A police officer who stops a motorist for a routine traffic violation is not permitted to expand the detention into a fishing expedition for evidence of unrelated offenses.

The Fourth Amendment protects against unreasonable searches and seizures, including seizures that involve only a brief detention.[7] A detention must last no longer than is necessary to effectuate the purpose of the stop, and the scope of the detention must be carefully tailored to its underlying justification.[8] Here, the officers purportedly stopped Cuaresma and Crumbley because the truck they were in illegally crossed three lanes of traffic without signaling to make a left-hand turn. It is undisputed that the initial stop was valid because of the traffic offense. However,

> the officer's purpose in an ordinary traffic stop is to enforce the laws of the roadway, and ordinarily to investigate the manner of driving with the intent to issue a citation or warning. Once the purpose of that stop has been fulfilled, the continued detention of the car and the occupants amounts to a second detention.[9]

A law enforcement officer who questions and detains a vehicle's driver and passengers outside the scope of a valid traffic stop exceeds the scope of permissible investigation unless he has reasonable suspicion of other criminal activity or unless the valid traffic stop has de-escalated into a consensual encounter.[10] This reasonable suspicion must be based on more than a subjective, general suspicion or hunch; the detention must be justified by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the detention, and the officer must have some

---

[6] Id. at 83 (1).

[7] See *Daniel v. State*, 277 Ga. 840, 841 (1) (597 SE2d 116) (2004).

[8] Id.

[9] Id.

[10] See *McMichael*, supra at 737 (1); *State v. Sims*, 248 Ga. App. 277, 279-280 (546 SE2d 47) (2001).

basis from which the court can determine that the detention was neither arbitrary nor harassing.[11] Here, one of the officers involved in the traffic stop admitted at the motion to suppress hearing that the officers did not have any objective evidence that Cuaresma and Crumbley were engaged in any illegal activity, other than the alleged traffic stop. Since it is clear that the officer in the present case did not have the necessary reasonable suspicion of other criminal activity to detain Cuaresma and Crumbley, the state relies on Crumbley's consent to warrant their prolonged detention.

It is well established that Fourth Amendment rights may be waived by voluntarily consenting to search.[12] However, when the state relies upon consent, it has the burden of showing that the consent was voluntary and not the result of express or implied duress or coercion.[13] Officers may request consent to search as long as they do not convey a message that compliance with their request is required.[14] The crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.[15] A consent to search will normally be held voluntary if the totality of the circumstances fails to show that the officers used fear, intimidation, threat of physical punishment, or lengthy detention to obtain the consent.[16]

Here, the videotape speaks for itself. It vividly shows that the officers used intimidation, harassment, and threats of arrest to convince Crumbley to consent to the search. Crumbley's so-called consent, at best, was merely an "acquiescence to authority" since the officers essentially told Crumbley that the truck would be searched regardless of his consent.[17] It is obvious from the videotape and the officer's testimony at the motion to suppress hearing that the officers had no particularized, objective basis for suspecting Crumbley of criminal activity, yet the officers decided to conduct a drug investigation rather than ticket Crumbley and release him.[18] The consent in this case was coerced and thus invalid. The trial court erred in denying the motion to suppress.

*Judgment reversed. Barnes, C. J., and Phipps, J., concur.*

---

[11] See *State v. Gibbons*, 248 Ga. App. 859, 863-864 (2) (547 SE2d 679) (2001).

[12] See *Payne v. State*, 244 Ga. App. 734, 735 (2) (536 SE2d 791) (2000).

[13] Id.

[14] See *McMichael*, supra at 739 (1).

[15] Id.

[16] See *Noble*, supra at 83 (2).

[17] See *Payne*, supra at 742 (5); *Murphy v. State*, 230 Ga. App. 365 (496 SE2d 512) (1998).

[18] *Payne*, supra at 742-743.

DECIDED JUNE 18, 2008.

*John A. Nuckolls, John A. Nuckolls, Jr., Benjamin B. Reed*, for appellants.

*Garry T. Moss, District Attorney, Samuel K. Barger, Sara A. Thompson, Assistant District Attorneys*, for appellee.