## A08A0084. HAYES v. THE STATE.

### (665 SE2d 422)

MIKELL, Judge.

Bruce Hayes appeals from his convictions for trafficking in cocaine and methamphetamine. In his sole enumeration of error, he contends that the trial court erred by denying his motion to suppress. We disagree and affirm.

In reviewing a trial court's order on a motion to suppress, we construe the evidence most favorably to uphold the court's findings and judgment.[1] The trial court sits as the trier of fact; its findings are akin to a jury verdict and will not be disturbed unless *no* evidence exists to support them.[2] As stated in *State v. Lanes*,[3] "[we] cannot, and will not, usurp the authority of the trial judge to consider such factors as demeanor and other credibility-related evidence in reaching its decision."[4]

Bearing these principles in mind, we review the evidence adduced at the suppression hearing. On August 3, 2005, Georgia State Patrol Master Trooper Lorenzo Harris, who had twenty-nine years of experience, stopped Hayes after clocking him traveling ten miles per hour over the speed limit, by pacing behind Hayes at the same speed and by using radar. When the trooper approached Hayes, Harris first checked for his safety by observing Hayes's body language. Then Harris asked for Hayes's license, registration, and insurance, and

---

[1] See *State v. Brown*, 278 Ga. App. 457, 460 (629 SE2d 123) (2006).

[2] Id. at 459-460; see also *Evans v. State*, 262 Ga. App. 712 (1) (586 SE2d 400) (2003).

[3] 287 Ga. App. 311 (651 SE2d 456) (2007).

[4] (Punctuation omitted.) Id. at 312, quoting *Brown*, supra at 461.

explained to Hayes the reason that he was stopped. Harris observed that Hayes was very nervous. The trooper testified "that was an indicator to kind of alarm me to kind of, you know, become aware." While the trooper checked Hayes's license and registration, Hayes remained in his car. After checking Hayes's license and registration, the trooper asked Hayes to get out of the car and spoke with him before telling him that he planned to issue Hayes a warning ticket. The trooper testified that it was his practice to ask a motorist to step out of the car so he has "a better chance to see his entire body" and talk to him. When Harris asked Hayes why he was still so nervous after being told he would only get a warning, Hayes responded that "he couldn't help it." Approximately "thirty to forty-five seconds" after giving the warning ticket and returning the paperwork to Hayes, the trooper asked for and received Hayes's consent to search his car. The trooper testified that he read Hayes the *Miranda* warning before the video camera that taped the traffic stop. The videotape was played for the trial court and has been included in the record on appeal.

The videotape shows the trooper getting out of his patrol car and walking to the front passenger window of Hayes's car. The officer talked with Hayes for approximately one minute before walking back to his patrol car with paperwork he obtained from Hayes. Approximately seven minutes later, the trooper walked back to the front passenger window of Hayes's car and said something very briefly that cannot be heard on the videotape. Hayes exited his vehicle approximately three seconds later. The trooper and Hayes then talked for approximately one minute before they walked off camera. The trooper started searching the car nine minutes after Hayes exited the car. The videotape time counter shows that the trooper started searching Hayes's car at "2204:18." The written consent form signed by Hayes states that it was signed at "10:15 p.m. (2215 HRS)." The stipulated evidence at Hayes's bench trial shows that the trooper found 55.6 grams of cocaine and 55.76 grams of methamphetamine in a bag in the rear floorboard of Hayes's car.

In its written order denying Hayes's motion to suppress, the trial court made the following findings:

> After checking the Defendant's license and running the tag, Trooper Harris returned to the car and informed the Defendant he was giving him a warning. Trooper Harris testified that in his experience, once he told a driver he or she was only receiving a warning, any nervousness usually ceased. Trooper Harris testified that the Defendant was still extremely nervous and his hands were shaking.

> Because of the Defendant's continued nervous behavior, Trooper Harris asked the Defendant to get out of the car, at which time he returned the Defendant's driver's license and other paperwork. Within 30 seconds of returning the Defendant his documentation, Trooper Harris asked for the Defendant's consent to search the vehicle.

The trial court concluded that Harris had probable cause to make the traffic stop based on his observance of a traffic violation. The court further concluded that, because the trooper asked for consent "almost contemporaneously" with the return of Hayes's paperwork, the request for consent to search his car did not unlawfully prolong the detention. On appeal, Hayes challenges both of these rulings.

1. Hayes argues that the state trooper did not have probable cause to stop him because he was not traveling more than ten miles per hour over the speed limit. In support of this argument, Hayes cites OCGA § 40-14-8 (a), which provides:

> No *county, city, or campus officer* shall be allowed to make a case based on the use of any speed detection device, unless the speed of the vehicle exceeds the posted speed limit by more than ten miles per hour and no conviction shall be had thereon unless such speed is more than ten miles per hour above the posted speed limit.[5]

Because the master trooper who initiated the stop was a member of the Georgia State Patrol, he was not bound by OCGA § 40-14-8 (a), which expressly applies only to "county, city, or campus officers."[6] Accordingly, this argument fails.

2. Hayes claims that the trial court erred in refusing to suppress the evidence against him because his consent to search was the product of an impermissibly prolonged detention. Specifically, Hayes argues that the traffic stop ended before Harris asked for his consent to search, and that absent consent or a reasonable suspicion of further criminal activity, his "continued detention" was prohibited by the Fourth Amendment.[7] Based on controlling federal and state authority, we disagree.

In *Salmeron v. State*,[8] our Supreme Court rejected the defen-

---

[5] (Emphasis supplied.)
[6] See *Wilshin v. State*, 289 Ga. App. 683, 684 (2) (658 SE2d 224) (2008).
[7] See *Ward v. State*, 277 Ga. App. 790, 792 (627 SE2d 862) (2006).
[8] 280 Ga. 735 (632 SE2d 645) (2006).

dant's assertion that his detention was prolonged when the officer asked him to get out of the car and ruled that the trial court correctly denied his motion to suppress.[9] The Court reasoned:

> [T]he dispositive factor in this case is not the nature or subject of the officer's questioning, but whether that questioning took place during Salmeron's otherwise lawful detention for committing the traffic violations in the officer's presence. If a driver is questioned and gives consent while he is being lawfully detained during a traffic stop, there is no Fourth Amendment violation. [Cit.] However, a seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission.[10]

The final, conditional sentence is a direct quotation from a United States Supreme Court case, *Illinois v. Caballes*.[11] This statement, although it may be true, is dictum, because prolonged detention was not an issue on certiorari. The Supreme Court accepted "the state court's conclusion that the duration of the stop . . . was entirely justified by the traffic offense and the ordinary inquiries incident to such a stop."[12]

The issue, the validity of a consent to search given during a traffic stop, is a "difficult" area of the law and one which has caused "much confusion . . . in the real world."[13] The differences of opinion among the Judges of this Court about the issue reach back at least to two whole court opinions issued in 2001, *State v. Gibbons*[14] and *Berry v. State*.[15] However, later decisions by the Supreme Court of Georgia and the United States Supreme Court have clarified many of the rules and have called into question the validity of some of our earlier

---

[9] Id. at 736 (1).

[10] (Punctuation omitted.) Id., citing *Illinois v. Caballes*, 543 U. S. 405 (125 SC 834, 160 LE2d 842) (2005).

[11] Supra at 407-408, citing *People v. Cox*, 782 NE2d 275 (Ill. 2002).

[12] *Caballes*, supra at 408.

[13] (Citation and punctuation omitted.) *Bibbins v. State*, 280 Ga. 283, 285 (627 SE2d 29) (2006).

[14] 248 Ga. App. 859 (547 SE2d 679) (2001).

[15] 248 Ga. App. 874 (547 SE2d 664) (2001). The leading appeals court cases in this area predate *Gibbons* and *Berry*. See *Simmons v. State*, 223 Ga. App. 781 (479 SE2d 123) (1996); *Smith v. State*, 216 Ga. App. 453 (454 SE2d 635) (1995). See also *State v. Sims*, 248 Ga. App. 277 (546 SE2d 47) (2001), a panel decision which seems completely in accordance with present law.

decisions.[16] Our recent decision, *Cuaresma v. State*,[17] holding that the prolonged detention was not warranted because appellants' consent to search was obviously coerced, is completely correct. However, *Cuaresma* cites *Daniel v. State*[18] without noting that *Daniel* was subsequently deemed "not viable" by *Salmeron*.[19] Further, *Cuaresma* cites *State v. McMichael*,[20] a case which predates *Salmeron* and relies on *Daniel*. Finally, *Cuaresma* apparently relies upon, without citing, the following misleading dictum from a special concurrence in *Gibbons*:[21] "[a] police officer who stops a motorist for a routine traffic violation is not permitted to expand the detention into a fishing expedition for evidence of unrelated offenses."[22] Actually, a police officer is absolutely permitted to expand the detention into unrelated offenses. The officer may question the motorist about anything and may ask for consent to search, as long as the questioning does not unreasonably prolong the detention, as explained, with dismay, by the dissent in *Salmeron*: "Today, th[e] . . . standard . . . allows any and all manner of interrogation, unrelated to the initial purpose of the traffic stop, so long as the questioning does not prolong the . . . traffic stop."[23]

Certain rules, deriving from an amalgamation of *Muehler v. Mena*,[24] a United States Supreme Court decision, and *Salmeron*,[25] a Supreme Court of Georgia opinion, appear to have evolved governing the validity of searches pursuant to consent when the consent is requested during or after a traffic stop. These rules presume the validity of the initial traffic stop based on probable cause or at least a reasonable, articulable suspicion of criminal activity.[26] The rules pertain only to federal constitutional objections pursuant to the

---

[16] For example, the statement in *Ward*, supra, citing *Daniel v. State*, 277 Ga. 840, 843 (2) (597 SE2d 116) (2004), that "[i]n the context of a traffic stop, a subsequent encounter may not be deemed consensual unless the driver's documents have been returned to him," (punctuation omitted) cannot be reconciled with *Salmeron*, supra at 737 (1), which approves language that "[the] consent was obtained during the traffic stop rather than afterward, which is permissible." (Citation omitted.)

[17] 292 Ga. App. 43, 46 (2) (663 SE2d 396) (2008).

[18] Supra.

[19] Supra at 738 (1). See also *State v. Sawyer*, 291 Ga. App. 462 (665 SE2d 2) (2008) (recognizing that *Salmeron* overruled *Daniel*).

[20] 276 Ga. App. 735, 737 (1) (624 SE2d 212) (2005).

[21] Supra at 867.

[22] *Cuaresma*, supra.

[23] *Salmeron*, supra at 739 (Sears, C. J., dissenting). See also *State v. Johnson*, 282 Ga. App. 102 (637 SE2d 825) (2006); *Sawyer*, supra.

[24] 544 U. S. 93 (125 SC 1465, 161 LE2d 299) (2005), cited in *Salmeron*, supra at 736 (1).

[25] Supra. See also *Johnson*, supra at 104-105, which relies on *Salmeron*, supra, but quotes *Simmons*, supra at 782 (2), a decision which *Salmeron* apparently overruled by implication.

[26] See *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968); *Johnson*, supra.

YALE LAW LIBRARY

Fourth Amendment, as there do not seem to be any cases applying the Georgia Constitution to consent searches during or after a traffic stop.[27] We offer them below for the benefit of the bench and bar.

(a) Consent given pursuant to a request made after the motorist has been detained for an *unreasonable* time is not a valid consent and contraband found during a subsequent search is the "fruit of the poisonous tree."[28]

(b) A reasonable time includes the time necessary to verify the driver's license, insurance, registration, and to complete any paperwork connected with the citation or a written warning.[29] A reasonable time also includes the time necessary to run a computer check to determine whether there are any outstanding arrest warrants for the driver or the passengers.[30]

(c) Questioning the driver or engaging in "small talk" while verifying the items mentioned above is not a seizure unless the detention is prolonged by the questioning.[31]

This rule is a conundrum if not a legal fiction, as illustrated in the case at bar. On cross-examination, the trooper was asked, "So, it's fair to say that you had quite a bit of conversation with Mr. Hayes." The trooper responded, "Yes. He's a human being." To be sure, tasks are completed faster when the performer does not engage in small talk. And any questioning or small talk, of course, prolongs the detention. The question is whether the prolongation is reasonable or unreasonable.[32] On this issue we should defer to the trial court unless the facts are truly egregious.[33] Traffic stop cases are typically very fact specific. Even when only one witness testifies, as

---

[27] See generally *Salmeron*, supra at 738 (1). But see id. at 740 (Sears, C. J., dissenting).

[28] See, e.g., *Wong Sun v. United States*, 371 U. S. 471, 487-488 (83 SC 407, 9 LE2d 441) (1963). See generally *Grandberry v. State*, 289 Ga. App. 534 (658 SE2d 161) (2008) (no consent; 40-minute detention unreasonable); *Salmeron*, supra; *Pledger v. State*, 257 Ga. App. 794, 799 (572 SE2d 348) (2002) (appellant's consent held "fruit of the poisonous tree").

[29] See *Fernandez v. State*, 275 Ga. App. 151, 157 (3) (b) (i) (619 SE2d 821) (2005). "An officer conducting a routine traffic stop may request and examine a driver's license and vehicle registration and run a computer check on the documents." (Citation and punctuation omitted.) Id. at 158. See also *Rosas v. State*, 276 Ga. App. 513, 518 (1) (c) (624 SE2d 142) (2005); *Rogers v. State*, 206 Ga. App. 654, 657 (2) (426 SE2d 209) (1992).

[30] *State v. Williams*, 264 Ga. App. 199, 202 (590 SE2d 151) (2003).

[31] *Salmeron*, supra at 736 (1), quoting *Muehler*, supra at 93. See also *Johnson*, supra at 104, quoting *Salmeron*, supra.

[32] See *Florida v. Jimeno*, 500 U. S. 248, 250-251 (111 SC 1801, 114 LE2d 297) (1991) ("The touchstone of the Fourth Amendment is reasonableness. The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable. Thus, we have long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so.") (citations omitted).

[33] See *Cuaresma*, supra.

in the case at bar, the testimony can be ambiguous.[34] Moreover, local factors within the knowledge of the trial court may influence a decision about the reasonableness of the stop. For example, the trial court knows whether the area is rural or urban, and may know whether the stop occurred during rush hour traffic or while it was raining.

(d) At one time the questions had to be related, however obliquely, to the reason for the traffic stop.

> [A] *Terry* stop is subject to strict boundaries regarding duration, intent, and scope. Such a stop has been described by this court as a brief stop, limited in time to that minimally necessary to investigate the allegation invoking suspicion, and limited in scope to identification and limited questioning reasonably related to the circumstances that justified the initiation of the momentary stop.[35]

However, now,

> even if police have no basis for suspecting that a person detained at a traffic stop is engaged in criminal activity unrelated to the stop, police may lawfully ask questions during the course of the stop about such unrelated activity, so long as the questioning does not prolong the stop beyond the time reasonably required to complete the purpose of the traffic stop.[36]

(e) Asking the driver to step out of the vehicle does not unduly prolong the detention.[37] Further, as a matter of Georgia law, it does not matter whether the request to search comes during the traffic stop[38] or immediately thereafter.[39]

---

[34] Any ambiguity in the evidence must be resolved in favor of the judgment, because "we adopt the trial court's findings of fact unless they are clearly erroneous, i.e., not supported by *any* evidence." (Citation omitted; emphasis supplied.) *Perez v. State*, 280 Ga. App. 241 (633 SE2d 572) (2006).

[35] (Citations and punctuation omitted.) *Smith v. State*, 216 Ga. App. 453, 454 (2) (454 SE2d 635) (1995).

[36] *State v. Davis*, 283 Ga. App. 200, 203 (2) (641 SE2d 205) (2007), citing *Salmeron*, supra at 738 (1) ("A valid ongoing seizure is not rendered 'unreasonable' simply because, during its course, certain unrelated questions, which the detainee is free to decline to answer, are posed to him or her."). The police may ask "any and all manner of interrogat[ories] unrelated to the initial purpose of the traffic stop." *Salmeron*, supra at 739 (Sears, C. J., dissenting).

[37] *Salmeron*, supra at 736 (1), citing *Pennsylvania v. Mimms*, 434 U. S. 106, 111, n. 6 (98 SC 330, 54 LE2d 331) (1977).

[38] *Chang v. State*, 270 Ga. App. 814 (608 SE2d 283) (2004).

[39] *Hampton v. State*, 287 Ga. App. 896 (652 SE2d 915) (2007); *Anderson v. State*, 265 Ga. App. 146 (592 SE2d 910) (2004).

Thus, our review of the relevant law shows that questioning before issuing a citation or written warning, and compelling the motorist to step out of the vehicle, are explicitly approved by controlling federal and state authority.[40] In any event, contrary to Hayes's contention, the evidence in this case does not demand a finding contrary to the trial court's determination that Harris did not prolong the detention. Harris testified that he wrote the warning ticket before he returned to Hayes's car a second time. Harris asked Hayes to exit the vehicle prior to issuing the warning ticket or returning his paperwork. The videotape reveals that ten minutes elapsed from the time Hayes exited the car and Harris began the search. At some unknown point during this ten-minute period, Harris returned Hayes's paperwork and issued him a warning ticket. Harris requested his consent to search 30 seconds later. The trial court did not err in concluding that this virtually contemporaneous request did not unreasonably prolong the detention.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED JULY 15, 2008.

*Sidney L. Storesund*, for appellant.
*Patrick H. Head, District Attorney, Erman J. Tanjuatco, Amelia G. Pray, Assistant District Attorneys*, for appellee.

---

[40] *Mimms*, supra; *Salmeron*, supra at 736-739 (1).