A09A1711. IN THE INTEREST OF A. T., a child.

(691 SE2d 642)

PHIPPS, Judge.

After the vehicle in which 16-year-old A. T. was a passenger was stopped, she was found to be in possession of cocaine. The juvenile court adjudicated A. T. delinquent, placed her on probation, and ordered her to pay a fine and fees. On appeal, A. T. contends that the juvenile court erred by refusing to dismiss the delinquency petition, by refusing to suppress the drug evidence, and by imposing the fine and fees. We find merit only in the challenge to the fine and fees. Accordingly, we affirm in part and vacate in part.

1. A. T. contends that the juvenile court erred by denying her motion to dismiss the delinquency petition. A. T.'s motion was premised on OCGA § 15-11-39 (a), which provides in pertinent part: "After the petition has been filed the court shall set a hearing thereon, which, if the child is in detention, shall not be later than ten

days after the filing of the petition." In *In the Interest of R. D. F.*,[1] the Supreme Court of Georgia held that the hearing required by the statutory provision is the adjudicatory hearing, not the arraignment hearing. "The language of OCGA § 15-11-39 (a) is mandatory and the adjudicatory hearing must be set for a time not later than that prescribed by the statute."[2] This procedural mandate, however, may be waived, or the hearing may be continued for good cause.[3]

A. T. was placed in detention on November 5, 2008, the day of the incident. A delinquency petition accusing her of cocaine possession was filed on November 7. Counsel[4] for A. T. filed a motion to suppress on November 12 and a motion for discovery on November 17. Meanwhile, on November 13, the juvenile court held an arraignment hearing, at which A. T., represented by counsel, denied the charge. At that hearing the court announced an adjudicatory hearing date of December 11, more than one month after the filing of the petition, without objection. On December 8, 2008, for reasons not apparent from the record, the court rescheduled the adjudicatory hearing from December 11 to December 18, 2008.[5] And on that latter date, the day of the adjudicatory hearing, A. T. filed her motion to dismiss, complaining that the juvenile court had not held the hearing within ten days of the filing of the delinquency petition.

At arraignment, A. T., represented by counsel, did not object to an adjudicatory hearing date set by the court beyond the statutorily prescribed ten-day time frame. Subsequently, she did not object to the scheduled hearing date at any time during the statutorily prescribed ten-day time period. Neither did she object to the scheduled hearing date at any other time before the date of the hearing. Given these circumstances, the juvenile court did not err in denying A. T.'s motion to dismiss.[6]

---

[1] 266 Ga. 294 (466 SE2d 572) (1996).

[2] *In the Interest of A. S.*, 293 Ga. App. 710, 711 (1) (667 SE2d 701) (2008) (punctuation and footnote omitted); see *In the Interest of M. D. C.*, 214 Ga. App. 59, 61-62 (447 SE2d 143) (1994), overruled on other grounds, *In the Interest of R. D. F.*, supra at 296 (3).

[3] See *In the Interest of R. D. F.*, supra at 295 (1) (the statutory time requirements can be waived, continued for the securing of legal representation, or for reasons within the discretion of the juvenile court); *Sanchez v. Walker County Dept. of Family &c.*, 237 Ga. 406, 408 (229 SE2d 66) (1976) (procedural requirements can be waived where there is no objection during the course of trial; trial court may, in its discretion, grant a continuance); *In the Interest of A. S.*, supra.

[4] A. T.'s counsel of record first appeared in the case at the detention hearing on November 6, 2008.

[5] However, the record does show that counsel for A. T., in arguing her motion to dismiss on December 18, told the court, "Your Honor, I don't have any problem with the changing of the 11th to the 18th. . . . I mean, that's not what I'm [objecting to]."

[6] See *In the Interest of A. S.*, supra at 711-712 (1) (affirming trial court's denial of juvenile's motion to dismiss petition, made on the date set for the adjudicatory hearing, where

2. A. T. contends that the juvenile court erred in denying her motion to suppress.

> In reviewing the grant or denial of a motion to suppress, we construe the evidence in a light most favorable to upholding the trial court's findings and judgment. When the trial court's findings are based upon conflicting evidence, we will not disturb the lower court's ruling if there is any evidence to support its findings, and we accept that court's credibility assessments unless clearly erroneous. The trial court's application of law to undisputed facts, however, is subject to de novo review.[7]

The sole witness at the combined suppression/adjudicatory hearing was Chad Kimbrough, a law enforcement officer at a county sheriff's office. The vehicle was stopped for running a stop sign. As Kimbrough and his fellow officer were walking to the vehicle, Kimbrough observed A. T., "the back seat passenger on the right moving around a lot," and because Kimbrough was "worried about [his] safety and . . . [his] partner's safety," he opened the car door and asked what was happening. A. T. replied that she was trying to put on her seat belt. Kimbrough told A. T. to stay still, but within a few minutes, he noticed that she was "moving around" again.

Meanwhile, Kimbrough's partner asked the driver for consent to search the vehicle, which the driver gave, and all the car occupants were directed to step out of the vehicle. Kimbrough patted down A. T. because of her persistent "moving around" in the back seat of a stopped car. The officer asked A. T. whether she had any type of contraband in her pockets and whether she had any identification. A. T. responded that she did not have anything except a pack of cigarettes. Kimbrough asked her to place the cigarette pack on the vehicle, which she did, and then he asked for consent to look inside the cigarette pack. A. T. gave consent and began to cry. Inside the cigarette pack, Kimbrough found a bag containing a substance that was later determined to be cocaine. On appeal, A. T. argues that her consent was invalid because it was obtained during an impermissibly long detention, after an illegal pat-down, and otherwise by way of coercion.

(a) Challenging the length of the detention, A. T. cites *Cuaresma v. State*[8] for the proposition that "[a] detention must last no longer

---

juvenile had not previously objected to the setting of the adjudicatory hearing date outside the ten-day time frame).

[7] *Sommese v. State*, 299 Ga. App. 664, 665 (683 SE2d 642) (2009) (citation omitted).

[8] 292 Ga. App. 43 (663 SE2d 396) (2008).

than is necessary to effectuate the purpose of the stop, and the scope of the detention must be carefully tailored to its underlying justification.["9] Construed in a light most favorable to upholding the trial court's findings and judgment, the evidence authorized a finding that A. T.'s consent was not given during an illegal detention. The state showed that the stop of the car was authorized, that the driver of the car consented to a search of the vehicle, and that A. T.'s consent was obtained shortly thereafter. There was nothing adduced in evidence that the search of the vehicle had ended before A. T. gave her consent or that the detention of A. T. was otherwise impermissibly expanded.[10]

(b) Challenging the pat-down, A. T. argues that Kimbrough did not have reason to believe that he was dealing with an armed and dangerous individual. A police officer may conduct a reasonable search for weapons

> where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.[11]

Kimbrough became concerned about his and his partner's safety, given that he had observed A. T.'s movements in the back seat as the officers were approaching the vehicle and her continued movements even after he asked her to sit still. Kimbrough was not required to accept A. T.'s explanation for the movements — trying to put on her seat belt — instead of determining for himself whether she was armed.[12] Construed in a light most favorable to upholding the trial court's findings and judgment, the evidence authorized the trial court to conclude that Kimbrough was warranted in his belief.[13]

(c) Arguing that the totality of the circumstances coerced her

---

[9] Id. at 46 (2) (footnote omitted).

[10] See *Sommese*, supra at 669-671 (1); see generally *State v. McMichael*, 276 Ga. App. 735 (624 SE2d 212) (2005).

[11] *Terry v. Ohio*, 392 U. S. 1, 27 (III) (88 SC 1868, 20 LE2d 889) (1968) (citations omitted).

[12] See *Silva v. State*, 278 Ga. 506, 509 (604 SE2d 171) (2004) (noting that there is no constitutional requirement that an officer stake his safety on suspect's explanation of his actions); see also *McMichael*, supra at 741 (2) (risks inherent in traffic stops create a strong interest in officer safety that justifies reasonable safety measures that minimally intrude upon Fourth Amendment privacy expectations).

[13] See *Sudduth v. State*, 288 Ga. App. 541, 542 (1) (654 SE2d 446) (2007) (for his safety, officer was authorized to conduct pat-down of driver, where after driver was stopped for traffic violation, officer observed driver place something in her pocket, place her hand in her pocket,

consent, A. T. cites *State v. Tye*,[14] which recognized:

> When relying on the consent exception to the warrant requirement, the State has the burden of proving that the accused acted freely and voluntarily under the totality of the circumstances. Application of the totality of the circumstances test requires consideration of several factors, including the age of the accused, his education, his intelligence, the length of detention, whether the accused was advised of his constitutional rights, the prolonged nature of questioning, the use of physical punishment, and the psychological impact of all these factors on the accused. In determining voluntariness, no single factor is controlling.[15]

A. T. claims that she was not advised that she could refuse to give her consent. She cites evidence that at some point two other police cars with four additional officers arrived at the scene. A. T. points out that she was a minor at the time of the incident; that she was asked questions by a police officer, who directed her to step out of the car and then conducted a pat-down upon her; and that when asked about the contents of the cigarette pack, she began to cry.

"The touchstone of the Fourth Amendment is reasonableness. Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances."[16]

> The voluntariness of the consent does not depend upon the fact that the individual was not expressly told by the officers that he was free to decline cooperation with their inquiry. While knowledge of the right to refuse consent is one factor

---

then refuse to remove her hand despite being repeatedly instructed to do so, and officer became concerned for his safety); *Leonard v. State*, 281 Ga. App. 184, 185 (1) (635 SE2d 795) (2006) (officer reasonably believed that driver was armed and therefore was justified in performing pat-down to find weapons, where officer noted that driver went into car's glove compartment more than once while searching for car rental agreement, was uncooperative in initially refusing to exit his vehicle, then failed to move to rear of vehicle when directed to do so, and reached for his waistband while glaring at officer); *Barnett v. State*, 245 Ga. App. 717, 718 (538 SE2d 812) (2000) (where police officer who approached vehicle at traffic stop saw passenger attempting to stuff a piece of paper into air conditioner vent with his hand and passenger then refused to comply with officer's commands to show his hands, such refusal constituted threatening conduct entitling officer to take reasonable action to protect himself); *Hayes v. State*, 202 Ga. App. 204, 205 (414 SE2d 321) (1991) (appellant could have pulled a weapon from console of his vehicle, notwithstanding his explanation for opening the console, and officer was authorized to conduct a pat-down to determine whether appellant was armed).

[14] 276 Ga. 559 (580 SE2d 528) (2003).

[15] Id. at 560 (1) (citations omitted).

[16] *McMichael*, supra at 736-737 (1) (citations and punctuation omitted).

to be taken into account, the State need not establish such knowledge as the sine qua non of an effective consent.[17]

Construed most favorably to uphold the trial court's findings and judgment, the evidence showed that the scope of the detention and pat-down were authorized; that Kimbrough's questioning was brief; and that the officer did not use "fear, intimidation, threat of physical punishment, or otherwise lengthen[ ] the detention in order to coerce [A. T.] into giving her consent."[18] We conclude that the trial court was authorized to find that the totality of the circumstances did not render A. T.'s consent invalid.[19]

3. A. T. contends that the trial court erred by imposing a fine and fees. The state cites OCGA § 15-11-66 (a) (7), which provides that

if [a] child is found to have committed a delinquent act and is subsequently determined to be in need of treatment or rehabilitation, the court may make . . . [a]n order requiring the child to remit to the general fund of the county a sum not to exceed the maximum applicable to an adult for *commission* of any of the following offenses: . . . [including] possession of controlled substances.[20]

The juvenile court found that A. T. committed the delinquent act alleged, possession of cocaine, and was in need of treatment or rehabilitation. However, OCGA § 16-13-30, which governs the offense of possession of cocaine, does not provide for the imposition of a fine for the commission of that offense.[21] Because the juvenile

---

[17] Id. at 739 (citations and punctuation omitted).

[18] *Sommese*, supra at 671 (2) (citation omitted); see also *State v. Davis*, 283 Ga. App. 200, 204 (2) (641 SE2d 205) (2007).

[19] See *Maryland v. Wilson*, 519 U. S. 408, 415 (117 SC 882, 137 LE2d 41) (1997) (an officer making a traffic stop may order passengers to get out of the car pending completion of the stop); *Sommese*, supra (where there was no evidence that officer used fear, intimidation, threat of physical punishment, or otherwise lengthened detention in order to coerce suspect into giving her consent, mere presence of more than one police officer on scene of traffic stop was not evidence that consent was coerced); *McMichael*, supra at 740-741 (2). Compare *Tye*, supra at 560-562 (upholding grant of suppression motion, given appellate court's duty to construe evidence most favorably to uphold trial court's findings and judgment, and given evidence of suspect's low I. Q., the conditions under which he was interviewed, and the absence of express warning of his right to refuse to comply with investigator's request).

[20] (Emphasis supplied.)

[21] OCGA § 16-13-30 (c); see *Donelson v. State*, 220 Ga. App. 688, 689 (3) (469 SE2d 861) (1996) (vacating fine imposed on defendant convicted of possession of cocaine because OCGA § 16-13-30 did not provide for fine); *Rawls v. State*, 210 Ga. App. 408, 409 (436 SE2d 527) (1993) (vacating fine, monetary penalty and fees imposed on defendant convicted of possession of cocaine with intent to distribute because penalty under OCGA § 16-13-30 did not include monetary fine). Compare *Marshall v. State*, 291 Ga. App. 284, 286 (2) (661 SE2d 662) (2008) (court did not err in imposing, as condition of probation, fine upon defendant convicted

court thus was not authorized to impose a fine upon A. T. for possessing cocaine, the judgment is vacated to the extent that it imposed a fine and related fees.

*Judgment affirmed in part and vacated in part. Smith, P. J., and Bernes, J., concur.*

DECIDED MARCH 9, 2010.

*Jared L. Roberts, John C. Culp,* for appellant.

*Richard E. Currie, District Attorney, John A. Rumker, Assistant District Attorney,* for appellee.

---

of possession of cocaine with intent to distribute; although OCGA § 16-13-30 did not provide for fine for conviction of that offense, fine was permissible under OCGA § 17-10-8 as condition of probation). Although the plain language of OCGA § 15-11-66 provides for a child to be placed on probation, see OCGA § 15-11-66 (a) (2), that Code section's plain language does not provide for any fine based thereupon. Compare OCGA § 15-11-66 (c) (where child who has not achieved high school diploma or equivalent is placed on probation, court may require as a condition of probation that the child pursue course of study designed to lead to achieving high school diploma or equivalent). See *In the Interest of D. H.*, 285 Ga. 51, 54 (3) (673 SE2d 191) (2009) (the literal meaning of a statute prevails unless such a construction would produce unreasonable or absurd consequences not contemplated by the legislature). Neither the order imposing probation nor the separate order imposing the fine and fees made payment thereof a condition of the probation. And spaces on the preprinted probation order form, which were expressly reserved for supervision fees, were left blank. See generally OCGA § 15-11-71 (concerning juvenile court's authority to collect supervision fees).