## A01A2099. JONES v. THE STATE.
### (560 SE2d 749)

BLACKBURN, Chief Judge.

Following a bench trial, Brian Keith Jones appeals his convictions for trafficking in cocaine, possession of a firearm, and carrying a concealed weapon, contending that the trial court erred by denying his motion to suppress. For the reasons set forth below, we affirm.

On appeal from a denial of a motion to suppress, this Court must construe the evidence most favorably to uphold the ruling of the trial court. *State v. Winnie.*[1] Furthermore, the trial court's application of law to facts which are undisputed is subject to de novo review. Id.

Viewed in this light, the record shows that, on the evening of February 17, 2000, Officer Bearden and Officer Loudermilk were parked in their patrol vehicle on the side of I-20. At approximately 10:00 p.m. that night, a car with no apparent tag[2] driven by Mark Lynch passed them. Jones was riding as a passenger in Lynch's car. The officers pulled out onto the interstate and began following Lynch's car to investigate the tag situation. At that point, Lynch weaved across the centerline twice, and Officer Bearden decided to

---

[6] *Norman v. State,* 197 Ga. App. 333, 336 (398 SE2d 395) (1990).

[1] *State v. Winnie,* 242 Ga. App. 228, 229 (529 SE2d 215) (2000).

[2] It was ultimately determined that the car had a dealership "drive-out" tag.

stop the car to investigate the tag and registration and to determine if Lynch was impaired.[3]

After the stop, Officer Bearden approached Lynch, whom he characterized as being "intensely" nervous. Officer Bearden informed Lynch that he stopped him to investigate the tag on the car and to determine whether he had been drinking. Lynch, who denied having consumed any alcoholic beverages, gripped the steering wheel tightly and pushed himself deep into the driver's seat. Officer Bearden testified that the level of nervousness displayed by Lynch exceeded that which was normal for a person stopped.

Shortly after approaching Lynch, Officer Bearden noticed the strong scent of several air fresheners located throughout the car. Officer Bearden testified that, at that point, he became wary that the car might contain contraband because of three factors: (1) Lynch's erratic driving; (2) the use of air fresheners to mask the odor of illegal contraband; and (3) Lynch's nervous behavior.

Officer Bearden requested Lynch's license, and, after handing over his learner's permit, Lynch informed the officer that Jones, the passenger, was the actual owner of the car. Officer Bearden then approached Jones and asked him for his driver's license and proof of registration. Although Jones did not have proof of registration, he handed Bearden his driver's license and explained that, because the car had recently been purchased, it had only a drive-out tag.

Officer Bearden next ran both driver's licenses through his police computer. At that point, Officer Bearden determined that Jones' license had been suspended. Bearden then approached Lynch, asked him to step out of the car, and contemporaneously asked him where he was going. Lynch responded that he and Jones were on their way to Birmingham, where they resided. After Lynch answered his question, Officer Bearden briefly patted him down and explained to him that he was giving him a warning citation and returned Lynch's license. At the same time, Officer Bearden stated that he needed to talk to Jones for a moment.

Having learned that his license was suspended, Officer Bearden approached Jones again in order to return his paperwork and inform him of his license status. While doing so, Officer Bearden asked Jones where he and Lynch were going when they were stopped. Jones initially replied that he and Lynch were "just riding." Officer Bearden asked the question a second time, and Jones responded that they were traveling to their cousin's house and asked Bearden if they had already passed Thornton Road, clearly implying that was their desti-

---

[3] It is undisputed that this initial stop was valid.

nation. Officer Bearden next asked Jones to step out of the car and patted him down.

At that time, Officer Bearden informed Jones that he was about to let them go, but he wanted to ask a "quick question." Officer Bearden then told Jones that he could not allow him or Lynch to drive the car, and he asked permission to search the car for drugs. Jones did not respond, and Officer Bearden told him that, although he and Lynch were free to leave, he was detaining the vehicle for a search by a drug dog. Approximately thirty minutes later, the canine unit arrived, and the subsequent search of the car revealed over 3,000 grams of cocaine, two revolvers, and a semi-automatic pistol.

Based on the discovery of this contraband, Jones was charged and convicted for trafficking in cocaine, possession of a firearm, and carrying a concealed weapon. Jones now contends that this conviction must be reversed because Officer Bearden violated his Fourth Amendment rights by detaining and questioning him after termination of the initial traffic stop. We disagree.

Jones does not question the efficacy of the initial stop, and, accordingly, we do not consider that issue here. Jones does, however, question the propriety of his detention and his car's detention after Officer Bearden returned Lynch's license to him and issued a warning. Jones argues that these latter acts ended the initial stop, and, at that point in time, Officer Bearden had no right to detain him any longer and ask him questions regarding contraband, a matter unrelated to either the drive-out tag or the earlier moving violation. The determination which must be made here, therefore, regards whether Officer Bearden's questioning of Jones and the ultimate detention and search of his car were reasonable pursuant to the Fourth Amendment, under the facts of this case.

First, we must determine at what point the initial stop terminated. The record supports a finding that the initial stop had not terminated at the time that Officer Bearden issued a warning to Lynch and returned his license to him, contrary to Jones' arguments. At that point, although Officer Bearden had concluded that Lynch was not impaired, and he had completed his investigation into the car's drive-out tag, he had not returned Jones' license to him or had the opportunity to discuss the driving situation with Jones. Necessarily, Officer Bearden had to discuss this situation with Jones because neither he nor Lynch could legally drive the car at that time. As such, the investigation continued.

As he was returning Jones' paperwork, Officer Bearden asked Jones where he and Lynch were going and received a response directly in conflict with the one given by Lynch. Subsequent to this response, and given the fact that neither Jones nor Lynch could be permitted to drive the vehicle, Officer Bearden decided to question

Jones about possible contraband in the vehicle which might be left on the roadway for some time and asked for consent to conduct a search.

The validity of an officer's investigative conduct upon making a stop is determined by balancing the extent of the intrusion against the immediacy and importance of the interest in crime prevention or law enforcement which he seeks to advance. In striking this balance, we have held that traffic stops must be limited in time and scope and that police officers must limit their questions to those reasonably related to the circumstances that justified the initiation of the stop. If the officer questions and detains the suspect for other reasons, he exceeds the scope of permissible investigation unless he has reasonable suspicion of other criminal activity. Whether a given set of facts rises to the level of reasonable, articulable suspicion of criminal activity is a legal question.

(Footnotes omitted.) *Bell v. State*.[4]

At the time that he decided to conduct a search of Jones' car if the drug dog reacted, Officer Bearden realized that the vehicle could be on the public roadway for some time and was also aware that: (1) I-20 is often used as a route to transport contraband; (2) Lynch was nervous after being stopped; (3) the car contained an unusual number of air fresheners (often associated with drug use); and (4) Jones and Lynch gave directly conflicting stories about their travel itinerary. Under the totality of the circumstances, the officer was authorized to detain Jones' car. See, e.g., *Almond v. State*;[5] *Pitts v. State*.[6]

Upon stopping the car, the officer's suspicions of illegal activity were aroused by the inconsistencies in the explanations given by [Jones] and [Lynch] concerning [their destination], and [Lynch's] increasing nervousness. Under such circumstances, the officer's suspicions were reasonable, and justified the brief investigative stop that grew out of the lawful traffic stop.

*Roundtree v. State*.[7]

Contrary to Jones' argument, it was not per se impermissible for Officer Bearden to ask him about his travel plans. Officer Bearden "merely asked these suspects about their travel itinerary in a man-

---

[4] *Bell v. State*, 248 Ga. App. 254, 256-257 (546 SE2d 34) (2001).
[5] *Almond v. State*, 242 Ga. App. 650 (530 SE2d 750) (2000).
[6] *Pitts v. State*, 221 Ga. App. 309 (471 SE2d 270) (1996).
[7] *Roundtree v. State*, 213 Ga. App. 793, 794 (446 SE2d 204) (1994).

ner which was not extensive or prolonged, and was not unconstitutionally intrusive when balanced against the widespread clear danger of drug peddling . . . via the roads of this state." (Punctuation omitted.) *Pitts*, supra at 311 (2).

Moreover, the fact remains that Officer Bearden did not detain Jones in this case. As neither Jones nor Lynch had a valid license to drive the car at that time, they were not free to drive the car from the scene, and the officers were free to call in the drug dog to check out this car on the side of a public roadway.

The trial court did not err in denying Jones' motion to suppress.
*Judgment affirmed. Pope, P. J., and Mikell, J., concur.*

DECIDED FEBRUARY 21, 2002 — 

*Bruce S. Harvey, David S. West*, for appellant.
*David McDade, District Attorney, William H. McClain, Assistant District Attorney*, for appellee.