A11A2236. SIMS v. THE STATE.
(722 SE2d 145)

PHIPPS, Presiding Judge.

Kenneth Sims was convicted of cocaine trafficking after the drug was found during a search of his car, which had been stopped by police. Challenging his conviction, Sims contends that the trial court erred by denying his motion to suppress the drug evidence. We affirm.

In *Tate v. State*,[1] the Supreme Court of Georgia discussed three fundamental principles which must be followed when conducting an

---

appellate review of an order ruling upon a motion to suppress.[2]

> First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support [them]. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.[3]

So construed, the evidence showed the following. At about 11:00 p.m. on March 16, 2009, a law enforcement officer stationed alongside an interstate so as to monitor traffic observed a passing vehicle that reduced its speed so quickly that it caused "the hood of the car to bow down." There were vehicles in front, behind, and to the side of the car. The officer merged into traffic to follow the car, and the driver of the car continued to slow its pace to the point that a "semi-truck that was behind him, had to switch lanes . . . to avoid hitting him in the rear end." The car crossed the dotted line that delineated the travel lanes, then the car's driver "corrected his path." Next, after a signal to move out of its travel lane — "the blinker blinked one time" — the car slipped "directly in front of another semi-truck," which left only about "a car length" between it and that truck. The officer determined that the driver of the car had not given the truck driver sufficient notice of the lane change, such that the maneuver was unsafe. In light of the above observations, the officer initiated a traffic stop to, inter alia, check for driver sobriety.

About a mile down the highway, the car stopped. When the officer approached the vehicle, he immediately detected a "very rich strong odor of air freshener coming from out of the vehicle." The officer testified that, "the extended time it took" for the vehicle to stop, together with "the abundance of air freshener in the vehicle," aroused his suspicion that the occupants were trying to mask the odor of alcohol or contraband. Sims was the driver, and traveling with him were a woman and child.

The officer asked Sims to provide his driver's license and to step outside the car; Sims complied. Noting that Sims's eyes seemed

---

[2] See generally *Miller v. State*, 288 Ga. 286-289 (1) (702 SE2d 888) (2010) (reaffirming *Tate*, supra).

[3] *Tate*, supra at 54 (1) (citations, punctuation and footnote omitted).

"bloodshot and watery," the officer explained to Sims the reason for the stop; the officer further asked Sims about his travel itinerary and whether he had been smoking marijuana because, as the officer testified, he was "trying to figure out whether [Sims] was under the influence or whether he was sleepy, how long had he been on the road and how much further did he have to go." Sims answered the questions, including denying that he had been smoking marijuana.

Having decided not to pursue roadside sobriety testing, the officer began writing Sims a warning citation. While writing the citation, the officer asked Sims whether he could ask him additional questions; Sims said yes. The officer asked Sims whether he had in the car narcotics or other contraband; Sims answered no to each question. Meanwhile, the officer completed the citation, and as Sims was signing it, the officer asked Sims for his consent to search the vehicle. Sims gave his consent. The officer handed Sims the citation, along with his license. As Sims moved toward his car, the officer asked Sims again for his consent to search the car; Sims again gave his consent. According to the officer, checking Sims's license, asking him questions, and writing the citation had taken "a couple of minutes."

The officer went to the passenger side of the car and, upon reaching the window, detected the odor of marijuana coming from inside the car. He asked the passengers to step outside the vehicle. After they complied, the officer searched Sims's car, finding therein not only marijuana, but a trafficking amount of cocaine.

The prosecutor argued to the trial court that the traffic stop was authorized by probable cause, pointing to evidence that Sims's lane change had been unsafe; and that consent to search Sims's car had been obtained during the course of writing the citation, then again immediately after the citation and Sims's license were handed to him. In ruling in favor of the state, the trial court determined that there was probable cause for the stop, and that the officer received consent to search.

In this appeal, Sims concedes that the officer was authorized to stop his car. And Sims does not dispute that he twice gave his consent to the search. He argues that his consent was nevertheless invalid, asserting that it was obtained during an illegal seizure on the ground that the traffic stop had been unlawfully prolonged.

"Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]."[4]

---

[4] *Whren v. United States*, 517 U. S. 806, 809-810 (II) (116 SC 1769, 135 LE2d 89) (1996).

Because a routine traffic stop, even one based on probable cause of a traffic code violation, is a type of seizure more akin to an investigative stop under *Terry v. Ohio*,[5] than a formal arrest, we apply the principles of *Terry* when analyzing the Fourth Amendment requirement that the scope and duration of the investigation conducted during a valid stop must be reasonable under the circumstances.[6]

"The officer's purpose in an ordinary traffic stop is to enforce the laws of the roadway, and ordinarily to investigate the manner of driving with the intent to issue a citation or warning."[7]

In determining whether the length of this detention was within the brief investigative period authorized by *Terry*, we consider "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant."[8]

While not contested here, the trial court was authorized to conclude that the police stop of Sims's car was justified.[9] And Sims has failed to show that the detention thereafter became unlawful such that his consent was ineffective. Given the officer's observations of Sims's manner of driving, the officer was authorized to procure Sims's license and use it to check into whether Sims was entitled to continue operating his vehicle.[10] The officer was also authorized to ask Sims to step outside his car;[11] "ordering [Sims] from the car was an extension of the constitutionally valid detention

---

[5] 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

[6] *State v. Williams*, 264 Ga. App. 199, 201 (590 SE2d 151) (2003) (citation omitted).

[7] *Salmeron v. State*, 280 Ga. 735, 736 (1) (632 SE2d 645) (2006) (citation and punctuation omitted).

[8] *Boyd v. State*, 300 Ga. App. 455, 458 (1) (685 SE2d 319) (2009), quoting *United States v. Sharpe*, 470 U. S. 675, 686 (II) (B) (105 SC 1568, 84 LE2d 605) (1985).

[9] See *Whren*, supra at 810 (II) ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.") (citation omitted); OCGA § 40-6-123 (concerning turning movements and required signaling); *Barrow v. State*, 269 Ga. App. 635, 637 (2) (605 SE2d 67) (2004) (police officer was justified in making traffic stop, where officer suspected that defendant was driving under influence after he braked so suddenly upon passing the patrol car that the front of his vehicle dipped, defendant changed lanes in medium traffic without signaling, and turn signal was needed for safety).

[10] See generally *Becoats v. State*, 301 Ga. App. 768, 770 (688 SE2d 686) (2009) ("It does not unreasonably expand the scope or duration of a valid traffic stop for an officer to prolong the stop to immediately investigate and determine if the driver is entitled to continue to operate the vehicle by checking the status of the driver's license, insurance, and vehicle registration.") (punctuation and footnote omitted).

[11] *Salmeron*, supra (once a motor vehicle has been lawfully detained for a traffic violation,

resulting from the traffic stop."[12] The officer did not impermissibly extend the stop with the brief questioning that occurred before he began writing the citation, as such inquiry was reasonably tailored to investigate whether Sims's driving maneuvers were the product of driving under the influence.[13] And once the officer then began writing the citation, the additional questioning did not impermissibly prolong the stop.[14]

Where, as here, "a driver is questioned and gives consent while he is being lawfully detained during a traffic stop, there is no Fourth Amendment violation."[15] "Once consent is legally obtained, it continues until it is either revoked or withdrawn";[16] the evidence did not show, and Sims does not assert, that he revoked or withdrew his initial consent. And "since the [second] request to search occurred almost contemporaneously with the conclusion of the traffic stop, it did not unreasonably prolong the stop."[17]

Sims has failed to establish that his consent was invalid as obtained during an illegal seizure on the ground that the traffic stop had been unlawfully extended.[18] Therefore, he has not shown error in the denial of his motion to suppress the drug evidence found during the search of his vehicle.[19]

*Judgment affirmed. Andrews and McFadden, JJ., concur.*

DECIDED JANUARY 12, 2012.

*Brunt & Hood, Jason P. Hood*, for appellant.

---

police officer may order driver out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures); *Rosas v. State*, 276 Ga. App. 513, 518 (1) (c) (624 SE2d 142) (2005) (out of concern for safety, an officer making a traffic stop may order driver and any passengers out of vehicle).

[12] *Salmeron*, supra at 737 (1).

[13] See *Williams*, supra at 202 (under *Terry*, supra, an officer's actions taken during valid traffic stop must be reasonably related in scope to circumstances which justified stop in first place, and limited in duration to the time reasonably necessary to accomplish purpose of stop); *Ivey v. State*, 301 Ga. App. 796, 798 (689 SE2d 100) (2009) (weaving, both out of one's lane and within one's own lane, particularly when combined with other factors, may give rise to reasonable articulable suspicion on the part of a trained law enforcement officer that the driver is violating the DUI laws).

[14] *Salmeron*, supra at 736, 738 (1) (mere police questioning does not constitute a seizure; unless the detention was prolonged by the questioning there is no additional seizure within the meaning of the Fourth Amendment; dispositive factor was not the nature or subject of officer's questions, but whether questioning took place during an otherwise lawful detention for committing traffic violations in the officer's presence).

[15] Id. at 736 (1) (citation omitted).

[16] *Wilson v. State*, 308 Ga. App. 383, 385 (2) (b) (708 SE2d 14) (2011) (citations omitted).

[17] *Davis v. State*, 306 Ga. App. 185, 187 (1) (702 SE2d 14) (2010) (citations omitted).

[18] See *Salmeron*, supra.

[19] See *Blitch v. State*, 281 Ga. 125-126 (1) (636 SE2d 545) (2006); *Salmeron*, supra.

*T. Joseph Campbell, District Attorney, Sharon M. Fox, Assistant District Attorney*, for appellee.