**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 20, 2014**

# In the Court of Appeals of Georgia

A13A2320. BRYANT v. THE STATE.

McFADDEN, Judge.

Cedric Demetrius Bryant was convicted of cocaine trafficking and obstructing an officer. He appeals the denial of his motion to suppress evidence, arguing that a police officer unlawfully detained him after an initial traffic stop had ended. We find that Bryant waived this argument by failing to raise it below. Even if Bryant had not waived this argument, the evidence supports the conclusion that the officer was still in the process of writing a warning citation when the driver consented to a search of the car. For these reasons, we affirm the trial court's denial of Bryant's motion to suppress and affirm his convictions.

Just before trial, the court conducted a hearing on the motion to suppress. The trial court orally denied the motion to suppress, but there is no written order in the record.

> Nonetheless, a trial judge is not required to make findings of fact after a hearing on a motion to suppress. When reviewing a trial court's decision on a motion to suppress, this court's responsibility is to ensure that there was a substantial basis for the decision. The evidence is construed most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous. Further, since the trial court sits as the trier of fact, its findings are analogous to a jury verdict and will not be disturbed if there is any evidence to support them. Although we are without specific findings in this case, in reviewing the denial of a motion to suppress, this [c]ourt may consider both the transcript of the motion hearing and the trial transcript.

*Barnes v. State*, 228 Ga. App. 44 (491 SE2d 116) (1997) (citations and punctuation omitted).

Viewed with these principles in mind, the evidence shows that Deputy Timothy Charles Scott with the Douglas County Sheriff's Office stopped the Buick in which Bryant was a passenger because the car's dealer drive-out tag did not display all the required information. Scott noticed three cell phones in the car, even though there

were only two occupants, Bryant and the driver. The driver handed Scott all the documents Scott requested: his driver's license, proof of insurance, and a bill of sale. Scott then returned to his patrol car to run the information on the computer and to verify the paperwork.

Scott returned to the Buick and asked the driver to step out. Scott and the driver walked to the area between the Buick and the patrol car, and Scott informed the driver that he had decided to issue a warning citation for the dealer drive-out tag violation, which would not cost the driver anything and would not go on his record. In Scott's 18 years as a law enforcement officer, it had been his experience that once he informs drivers that they will receive only a warning, they are relieved. But this driver seemed worried, as evidenced by his short answers and his eyes. While Scott was writing the citation, he conversed with the driver. He asked the driver what took him to Birmingham, and the driver said he was going to see a friend. Scott asked the driver if he had to take off the day from work, and the driver said that he is out of work and disabled. Scott was suspicious, given that the driver had three cell phones and a new car.

The driver put his hands in his pocket, so Scott asked if he could check him for weapons. The driver responded affirmatively, so Scott patted him down. Scott felt a

3

large amount of folded money in the driver's pocket. The driver said it was $300 or $400. Scott thought this, too, was suspicious, given the driver's claim that he was out of work on disability.

Scott needed the vehicle identification number to complete the warning citation. He walked back to the Buick and asked Bryant to read him the vehicle identification number from one of the documents because he had forgotten to write it down. Scott began talking to Bryant. Bryant did not know where they were going, did not know the name of the friend they were visiting, did not know how long he was going to be away, and did not have an overnight bag. Bryant was so nervous that Scott thought he must have a warrant out for his arrest.

Scott walked back to the driver and asked him the year of the car. He asked the driver if he had anything illegal in the car, and the driver responded no. Scott asked the driver for consent to search the car. The driver consented. Scott then asked the driver to sign the citation and confirmed that he had consent to search.

Scott called for backup. While Scott talked with the driver, the backup officer was interacting with Bryant. Suddenly, Bryant fled into the woods and the backup officer gave chase. Scott secured the driver of the Buick in the police car, and then ran into the woods to assist the backup officer. When Scott came upon the backup

4

officer and Bryant, they were fighting. Bryant ignored the officers' commands to stop resisting. As Scott held Bryant in a bear hold, Bryant reached into his pants, removed a duct-taped package and threw it down. The package contained 499.88 grams of cocaine that was 61.7 percent pure.

Deputy Scott's dashboard camera recorded the stop, and the recording was played for the judge when he ruled on the motion to suppress and for the jury at trial.

Bryant argues on appeal that Scott unlawfully detained him after the initial traffic stop had ended when Scott said that he would only issue a warning citation. But Bryant did not raise this argument in his motion to suppress or at the hearing on the motion. He therefore has waived the argument. *Locher v. State*, 293 Ga. App. 67, 68-69 (1) (666 SE2d 468) (2008). At the hearing on the motion, Bryant joined his co-defendant's argument that Scott impermissibly exceeded the scope of the stop by asking several questions unrelated to the stop. Even in response to the state's position that Scott had not finished writing the warning citation when he obtained the driver's consent to search, counsel did not argue that the stop ended when Scott said he would issue a warning citation. "In challenging a trial court's denial of a motion to suppress, a defendant may not argue on appeal grounds that he did not argue (and obtain a ruling on) below. Notwithstanding his waiver, however, [Bryant's] argument is

unavailing." *Bryant v. State*, 288 Ga. 876, 894 (13) (b) (708 SE2d 362) (2011) (citations and punctuation omitted).

Our Supreme Court addressed consents to search elicited during traffic stops in *Salmeron v. State*, 280 Ga. 735 (1) (632 SE2d 645) (2006), ruling that

> the Fourth Amendment is not violated when, during the course of a valid traffic stop, an officer requests of the driver consent to conduct a search. If a driver is questioned and gives consent while []he is being lawfully detained during a traffic stop, there is no Fourth Amendment violation.

*Blitch v. State*, 281 Ga. 125, 125-126 (1) (636 SE2d 545) (2006) (citation and punctuation omitted). "However, a seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Salmeron v. State*, supra, 280 Ga. at 736 (1) (punctuation omitted; quoting *Illinois v. Caballes*, 543 U. S. 405, 407 (125 SCt 834, 160 LE2d 842) (2005)).

Bryant argues that the police illegally detained him after the traffic stop had ended. See, e.g., *Gonzales v. State*, 255 Ga. App. 149, 150 (564 SE2d 552) (2002) ("Once a routine traffic stop has ended, an officer must have either valid consent or reasonable suspicion of criminal conduct before conducting additional questioning and searching a vehicle.") (citation omitted). But the evidence supports the

6

conclusion that the purpose of the traffic stop had not ended when the driver granted consent to search the car. "The officer's purpose in an ordinary traffic stop is to enforce the laws of the roadway, and ordinarily to investigate the manner of driving with the intent to issue a citation or warning. Once the purpose of that stop has been fulfilled, the continued detention of the car and the occupants amounts to a second detention." *Salmeron*, 280 Ga. at 736 (1) (citations and punctuation omitted).

Bryant argues that the traffic stop ended when Scott explained to the driver that he had "decided to issue him a written warning, it [would] not cost him any money and it [would not] go on his record and after [he had] complete[d] it, that he'[d] basically be on his way." But the video recording from Scott's dashboard camera establishes that at the point he asked for consent to search, Scott had not finished writing out the citation. Consequently, the trial court did not err in denying the motion to suppress. See *Sims v. State*, 313 Ga. App. 544, 546 (722 SE2d 145) (2012) (denial of motion to suppress affirmed where defendant first gave consent to search as he was signing completed citation and gave consent again shortly thereafter ). Cf. *Weems v. State*, 318 Ga. App. 749, 752 (1) (734 SE2d 749) (2012) (after officer had already written a warning citation, further detention of defendant was unlawful where

7

the only basis for officer's actions was the nervousness of defendant and the conflicting stories of defendant and passenger).

*Judgment affirmed. Doyle, P. J., and Boggs, J., concur.*