**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY , JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**May 6, 2014**

# In the Court of Appeals of Georgia

A14A0325. BAKER v. THE STATE.

MCFADDEN, Judge.

Emanuel Baker appeals his convictions of possession of oxycodone and possession of methadone. He argues that the trial court erred by denying his motion to suppress drugs seized during a traffic stop because the arresting officer had improperly expanded the stop. We find that the arresting officer's decision to continue the stop was founded on a reasonable, articulable suspicion. We therefore affirm Baker's convictions.

Before trial, the trial court conducted a hearing on the motion to suppress and entered a one-sentence, written order denying it. Even without factual findings, however, we construe the evidence most favorably to uphold the judgment, and our "responsibility is to ensure that there was a substantial basis for the decision." *Bryant*

*v. State*, __ Ga. App. __, __ (__ SE2d __) (Case No. A13A2320, decided March 20, 2014) (citation and punctuation omitted).

Viewed with these principles in mind, the evidence shows that Troy Embrey, a deputy with the Forsyth County Sheriff's Office, pulled over the pickup truck that Baker was driving for a tag light infraction. As he approached the truck with his spotlight illuminated, Embrey saw the truck's two passengers bending toward the floorboard, as if they were trying to hide something.

Embrey asked Baker for his driver's licence and noticed that Baker's hands were shaking severely as he was going through his wallet. Embrey introduced himself to the two passengers. The middle passenger, Baker's daughter, was engaging and made eye contact, but the other passenger, the daughter's boyfriend, would not make eye contact, acted nervously and stared straight ahead, even when Embrey spoke to him. Embrey asked Baker to exit the vehicle because there were multiple occupants and separating them was safer, and to show Baker the inoperative tag light. Baker was fidgety when he exited.

Embrey noticed that Baker's pupils were abnormally constricted, given that it was dark outside, which possibly indicated his consumption of narcotics or narcotic analgesics, so Embrey asked Baker if he had taken any medication. Baker answered

2

that he had taken his prescribed oxycodone earlier in the day; and Embrey, a state-certified drug recognition expert, found this explanation satisfactory. It "matched up perfectly with the constricted pupils."

Therefore, Embrey continued the detention to investigate whether Baker was a less safe driver because of his consumption of oxycodone . See OCGA § 40-6-391 (a) (2), (b). See generally *State v. Beck*, 275 Ga. 688 (572 SE2d 626) (2002). Baker agreed to submit to field sobriety evaluations. Although some components of the evaluations indicated that Baker was impaired, Embrey did not feel the results were sufficient to arrest Baker for driving under the influence.

Nonetheless, Embrey suspected "something else." Although Embrey believed the tests results insufficient to establish probable cause for a DUI arrest, the results of Baker's horizontal gaze nystagmus test were "indicative of potentially some use of a depressant," not the narcotic oxycodone that Baker said he had taken. Those results, together with Baker's constricted pupils, his admission of having taken oxycodone, the signs of impairment that were consistent with the use of a drug other than oxycodone, the passengers' reaching down as if to hide something as Embrey stopped the truck, and the nervousness of Baker and one of the passengers, made Embrey "suspicious that maybe there was something else with the traffic stop. Maybe

3

[Baker] had prescription medication or illegal drugs on his person or in the car or something to extend the traffic stop further." So Embrey again continued the detention to investigate this possibility.

Embrey asked for and was given Baker's consent to search the truck and to pat him down for weapons and contraband. Embrey also asked for and was given the consent of the two passengers to pat them down.

A female deputy patted down Baker's daughter and discovered a small, enameled pill box in her bra, which contained one oxycodone pill and one methadone pill. Baker admitted that the pills were his and that he had given his daughter the pill box to hide.

Baker argues that the trial court erred in denying his motion to suppress the drugs. He contends that Embrey did not have reasonable, articulable suspicion to continue the detention once he had finished dealing with the traffic violation and concluded the driving-under-the-influence investigation and that the consents to the pat-down searches were therefore invalid. We disagree.

Once the purpose of a traffic stop has been fulfilled, the continued detention of a vehicle and its occupants amounts to an additional detention, which "passes muster under the Fourth Amendment when the officer has a reasonable[,] articulable

4

suspicion of other illegal activity." *Harkleroad v. State*, 317 Ga. App. 509, 511 (1) (732 SE2d 278) (2012). In this case, there were three detentions: the first detention for the tag light violation, the second detention for the investigation of Baker's suspected driving under the influence, and the third detention during which Baker and his passengers consented to the searches. Baker does not challenge the legality of the first two detentions. Nor does he question the scope of the pat-down search of his daughter. See *Gilbert v. State*, 159 Ga. App. 326, 327 (1) (283 SE2d 361) (1981) (defendant had no legitimate expectation of privacy in companion's clothing and therefore had no standing to challenge seizure of cocaine from her blue jeans). The issue on appeal, therefore, is whether reasonable, articulable suspicion of other illegal activity supports the third detention.

Embrey articulated the reasons he suspected that Baker and his passengers were engaged in illegal activity: Baker's admission to having taken a narcotic did not explain the signs of his impairment consistent with the use of a depressant; as Embrey stopped Baker's truck, the passengers reached down as if to hide something; and Baker and one of the passengers were remarkably nervous. Embrey's "suspicion was not based on mere caprice or hunch, but rather on specific [facts, among others, the results of the horizontal gaze nystagmus test,] that, based on his training as a certified

5

[d]rug [r]ecognition [e]xpert, led him to believe that [Baker] was under the influence of a controlled substance." *Maloy v. State*, 293 Ga. App. 648, 650 (1) (667 SE2d 688) (2008). This suspicion, in conjunction with the evidence of the passengers' movement and Baker's and one passenger's nervousness and the reasonable inferences drawn from this evidence, provided a substantial basis for the trial court's denial of the motion to suppress. *Bothwell v. State*, 250 Ga. 573, 578 (4) (300 SE2d 126) (1983) (reasonable suspicion that supports seizure is based on specific and articulable facts and rational inferences from those facts) (citation omitted); *Bryant*, supra, __ Ga. App. at __ (citation and punctuation omitted). See also *Jones v. State*, 259 Ga. App. 849, 852 (578 SE2d 562) (2003) (evidence that officer saw defendant reaching under passenger seat while defendant denied doing so, along with defendant's nervous behavior, justified brief detention).

For these reasons, the trial court did not err in denying the motion to suppress, and we affirm Baker's convictions.

*Judgment affirmed. Andrews, P. J., and Ray, J., concur.*