**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**RAY and RICKMAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**August 8, 2018**

# In the Court of Appeals of Georgia

A18A1331. FLORES v. THE STATE.
A18A1332. VAZQUEZ v. THE STATE.

McFADDEN, Presiding Judge.

On April 11, 2013, a law enforcement officer stopped a car on an interstate highway for a window tint violation. Jose Vazquez was driving the car and Hortencia Flores — the car's owner — was a passenger. During the course of the traffic stop, both Flores and Vazquez consented to a search of the car, in which methamphetamine was found, and after a bench trial they were convicted of trafficking in methamphetamine. See OCGA § 16-13-31 (e). In these consolidated appeals, Flores and Vazquez challenge the trial court's denial of their motion to suppress the methamphetamine found in Flores's car, arguing that their consent was invalid

because the traffic stop was unreasonably prolonged. But the evidence supports the trial court's ruling, so we affirm in both cases.

1. *Facts.*

"When reviewing the grant or denial of a motion to suppress, an appellate court must construe the evidentiary record in the light most favorable to the trial court's factual findings and judgment. An appellate court also generally must limit its consideration of the disputed facts to those expressly found by the trial court." *Caffee v. State*, __ Ga. __, __ (814 SE2d 386) (Case No. S17G1691, decided May 7, 2018) (citations and punctuation omitted). Although the trial court in these cases did not issue a written order when he denied the defendants' motion to suppress, he also addressed the suppression issue in his order denying their motion for new trial. In that order, the trial court made express factual findings relating to his suppression decision,[1] and in our review of the suppression decision we "must focus on the facts found by the trial court in [that] order[.]" Id. at __ (1) (citation and punctuation omitted). We also may consider "facts indisputably discernible from [the] videotape"

[1] The new trial order included a recitation of the trial testimony of several law enforcement officers and an express finding by the trial court that the officers' testimony was consistent with the video recording of the traffic stop. We therefore construe the trial court's recitation of the officers' testimony to constitute express factual findings that we may consider on appeal.

of the traffic stop, which is contained in the record and was presented to the trial court. Id. (citation and punctuation omitted).

So viewed, the record establishes that slightly less than 30 minutes elapsed from the beginning of the traffic stop to the point at which law enforcement officers searched the vehicle. The following activities took place during those 30 minutes. An officer pulled over the vehicle for a suspected window tint violation. He briefly spoke with Vazquez, then tested the window tint and determined that it was too dark. The officer took Vazquez's drivers license and asked him to step out of the vehicle. He then engaged Vazquez in conversation for approximately two minutes, explaining that the tint was too dark and, because the vehicle had a license plate from another state, asking where they had been. During this interaction, Vazquez's hands were shaking, he was breathing rapidly, and he did not make eye contact.

Less than four minutes into the traffic stop, the officer returned to the vehicle to retrieve identification from and speak with Flores. He verified that she was the owner of the vehicle. Flores gave the officer a reason for their trip to Georgia that differed from what Vazquez had told him. The officer tried to explain the window tint violation to Flores but was unsure if she understood him, because her primary

language is Spanish. For that reason, the officer asked for a Spanish-speaking officer to come to the scene.

Approximately six minutes into the traffic stop, the officer returned to his police vehicle. During that time, he checked Vazquez and Flores's identification and took steps to issue a traffic citation. Approximately 19 minutes into the traffic stop, the Spanish-speaking officer arrived and began speaking with Flores about the nature of the citation. During their conversation, Flores volunteered — without being asked — that the officers could search her vehicle.

Approximately 25 minutes into the traffic stop, the first officer handed Vazquez the citation and his drivers license and Flores got out of the vehicle. Around that time, the first officer asked Vazquez for consent to search the vehicle, and Vazquez agreed. Another officer with a narcotics dog had arrived, and approximately 27 minutes into the traffic stop the dog indicated the presence of drugs in the vehicle. At that point, the officers searched the vehicle and discovered methamphetamine.

2. *The trial court did not err in denying the motion to suppress, because the search was conducted pursuant to the valid consent of Flores and Vazquez.*

The trial court denied the motion to suppress, finding that during the traffic stop both Flores (the vehicle's owner) and Vazquez (the vehicle's driver) had given

4

valid consent to the search that led to the discovery of the methamphetamine. Valid

consent is an exception to the Fourth Amendment's warrant requirement. See *Caffee*,

__ Ga. at __ (2); *Sims v. State*, 313 Ga. App. 544, 548 (722 SE2d 145) (2012). Flores

and Vazquez argue that their consent was not voluntary because the traffic stop had

been unreasonably prolonged when they consented to the search. See *Hayes v. State*,

292 Ga. App. 724, 729 (2) (a) (665 SE2d 422) (2008) ("Consent given pursuant to a

request made after the motorist has been detained for an unreasonable period of time

is not a valid consent[.]") (citations and emphasis omitted). We disagree.

As our Supreme Court has explained, a

"seizure that is justified solely by the interest in issuing a warning ticket
to the driver can become unlawful if it is prolonged beyond the time
reasonably required to complete that mission." Thus, "the tolerable
duration of police inquiries in the traffic-stop context is determined by
the seizure's 'mission' — to address the traffic violation that warranted
the stop, and attend to related safety concerns."

*State v. Allen*, 298 Ga. 1, 4 (2) (a) (779 SE2d 248) (2015) (quoting *Illinois v.*

*Caballes*, 543 U. S. 405, 407 (125 SCt 834, 160 LE2d 842) (2005), and *Rodriquez v.*

*United States*, __ U. S. __ (135 SCt 1609, 1614, 191 LE2d 492) (2015)). Whether a

traffic stop was unreasonably prolonged "may often be a fact-intensive determination,

5

but it is ultimately a holding of constitutional law that we review de novo." *State v. Allen*, supra at 4 (2) (citation omitted).

Flores and Vazquez argue that nearly all of the officers' actions were unnecessary to fulfill the purpose of the stop. But officers may, without unreasonably prolonging a stop, ask the driver to step out of the vehicle; verify the driver's license, insurance, and registration; complete any paperwork connected with the citation or written warning; and determine if there are any outstanding warrants for the driver or the passengers. *Hayes*, 292 Ga. App. at 729 (2) (b, e). Moreover, officers may ask questions unrelated to the purpose of the stop, so long as they do not prolong the stop beyond the time reasonably required to fulfill the stop's purpose. See *Moore v. State*, 321 Ga. App. 813, 815-816 (743 SE2d 486) (2013).

The trial court determined that the involvement of the Spanish-speaking officer was needed to fulfill the purpose of the stop, and we find no error in this determination. An officer's mission in a traffic stop ordinarily includes activities that serve the objective of "ensuring that vehicles on the road are operated safely and responsibly." *Rodriguez*, __ U. S. at __ (II) (citations omitted). The act of explaining to a vehicle owner, who was present at a traffic stop, that her vehicle did not comply with legal requirements falls within this objective. The evidence supported the trial

6

court's finding that the officer who initiated the stop was unable to explain the nature of the violation to the vehicle's owner, Flores, due to a "language barrier." The Spanish-speaking officer arrived less than 20 minutes after the stop began, and shortly thereafter both Flores and Vazquez consented to the search. We agree with the trial court that, under the circumstances, the duration of the stop was not unreasonable. See *Waters v. State*, 306 Ga. App. 114, 117 (1) (701 SE2d 550) (2010) (delay caused by wait for arrival of specially-trained officer to conduct sobriety test, which resulted in 25-minute duration of traffic stop, did not unreasonably prolong stop).

Because the evidence supports the conclusion that the traffic stop had not ended when the officers obtained consent to search the car, the trial court did not err in denying the motion to suppress the evidence obtained through that search. See *Bryant v. State*, 326 Ga. App. 385, 388-389 (756 SE2d 621) (2014).

*Judgments affirmed. Ray and Rickman, JJ., concur*.